### ELLIS & COMPANY *v.* FARRELL.

Opinion delivered November 29, 1920.

1. APPEAL AND ERROR—DISMISSAL OF COUNTERCLAIM—HARMLESS ERROR.—The dismissal of a counterclaim interposed by defendants as assignees of another alleged to have a claim against plaintiff was not prejudicial to defendants where the written contract on which defendants based the alleged counterclaim did not contain the assignment relied on.

2. EVIDENCE—PAROL EVIDENCE OF WRITTEN CONTRACT.—In an action for breach of contract for the sale of steel rails, where defendants contended that plaintiff had resold the rails to a third person, to whom defendant had delivered them at plaintiff's request, and plaintiff denied that any such contract had been made, the alleged contract between plaintiff and the other was not a collateral issue, and such contract, if in writing, could not be proved by parol evidence without laying a proper foundation therefor.

3.  APPEAL AND ERROR—BRINGING UP REJECTED EVIDENCE.—A ruling
    excluding evidence of a contract can not be reviewed where ap-
    pellants failed to set out the rejected evidence in the bill of ex-
    ceptions.

4.  EVIDENCE—RES INTER ALIOS ACTA.—In an action against a seller
    for breach of the contract, where defendant relied on delivery to
    a third person to whom he alleged plaintiff had resold the goods,
    letters written by the third person to defendant relative to the
    alleged resale were inadmissible against plaintiff.

5.  TRIAL—REPETITION OF INSTRUCTIONS.—It was not error to refuse
    to give a requested instruction completely covered by the instruc-
    tions given by the court.

Appeal from Calhoun Circuit Court; *Chas. W. Smith,*
Judge; affirmed.

### STATEMENT OF FACTS.

J. J. Farrell sued T. J. Ellis & Company to recover
damages for an alleged breach of contract for the sale
by Ellis & Company to him of certain steel rails. Ellis
& Company denied they had breached the contract and
as a further defense to the action alleged that Farrell had
failed to deliver to Meyer Katz five miles of 25-pound
steel rails at Arkansas City, Arkansas, whereby Katz
was damaged in the sum of $5,000, and that Katz had
assigned and transferred this contract to them.

On motion of the defendants the court dismissed that
part of the answer of Ellis & Company which pleaded
as a counterclaim or set-off the assignment of the con-
tract of Katz to them. The defendants duly excepted to
the ruling of the court in this regard.

The plaintiff, J. J. Farrell, was a witness for him-
self. According to his testimony, on the fifth day of
April, 1917, he entered into a written contract with T. J.
Ellis & Company for the purchase of all the 35-pound
steel rails they had for $26 per ton and all the scrap iron
rails at $12 per ton, the rails to be delivered f. o. b. on
the cars at Ellisville, Arkansas, within sixty days. Pur-
suant to instructions from Farrell, Ellis & Company
shipped two cars of steel rails to McIntire at Pine Bluff,
Arkansas, and these cars do not enter into this contro-

versy. Farrell then sold two cars to Meyer Katz of St. Louis, Missouri, at $38 per ton and instructed Ellis to weigh them out and ship them to Katz at St. Louis. Farrell instructed Ellis to collect the money from Katz for the rails before he shipped them to him. Ellis did this, and retained the amount due his firm by Farrell for the purchase price of these two cars of rails and kept the balance, $654, which belonged to Farrell, and which was the profit he had made on these two cars of rails. Farrell sold the balance of the rails to the Shull Lumber Company of Lonoke for $40 per ton. There were about 5 3/4 miles of these rails. Ellis & Company also shipped these rails to Katz at St. Louis, and the latter refused to pay for them because he alleged that Farrell had failed to deliver to him certain other rails at Arkansas City, Arkansas, which Farrell had sold to him.

According to the evidence adduced in favor of Ellis & Company, Farrell sold all the rails to Katz, and they shipped out the rails to Katz at St. Louis, as they were instructed to do by Farrell. The agent and attorney of Katz gave them a draft for the purchase price of the rails at $38 per ton. Ellis & Company presented this draft for payment at the bank on which it was drawn, and the bank refused payment because it had been instructed to do so by Katz. Farrell had not paid Ellis & Company for these rails, and Katz subsequently paid to Ellis & Company the amount due them by Farrell for the purchase price of the rails. Ellis & Company and Katz then entered into a contract which reads as follows:

"This agreement, made and entered into this 6th day of September, 1917, by and between T. J. Ellis and S. C. Ellis, both of the city of Ellisville, and State of Arkansas, copartners doing business under the firm name and style of T. J. Ellis & Company, parties of the first part, and Meyer Katz, of the city of St. Louis, and State of Missouri, party of the second part, witnesseth: That, for and in consideration of the sum of $2,194.74 in hand paid to parties of the first part by said party of the second

part, the receipt of which said parties of the first part do hereby acknowledge, the said parties of the first part do hereby sell, assign, transfer and set over unto said party of the second part, the contents of the following cars of material, towit: Contents of car 31448, N. Y. C. & H., weight 62,900 pounds relaying rails. Contents of car 566, T. & B. V., weight 61,200 pounds relaying rails. Contents of car 113062, M., K. & T., weight 88,900 pounds relaying rails. Contents of car 92365, R. I., weight 72,600 pounds relaying rails  Contents of car 90686, R. I., weight 72,000 pounds relaying rails. Contents of car 383, M. C., weight 57,000 pounds of scrap iron. The total consideration for the contents of said cars being the sum of $4,400.04 minus $2,205.30, heretofore paid said parties of the first part by said party of the second part, leaving a balance of $2,194.74 above paid by said party of the second part to said parties of the first part.

"To have and to hold the aforesaid goods, wares and merchandise unto said party of the second part and his heirs and assigns forever, said parties of the first part hereby warranting that they have good title to the said goods and full right and authority to sell the same in the manner aforesaid, and that the same are free and clear of all incumbrances and liens.

"It is further stipulated and agreed that in the event one J. J. Farrell, of Brinkley, Arkansas, shall in the future assert any claim against parties of the first part on account of the alleged balance due said Farrell for the material above specified, and in the event said Farrell shall at any time hereinafter bring suit against said parties of the first part, said party of the second part does hereby agree that in the event said Farrell shall obtain judgment against said parties of the first part on account of the contents of said cars aforesaid, then said party of the second part hereby agrees to indemnify and hold harmless said parties of the first part for any moneys that they may pay said Farrell on account of said judg-

ment so obtained; provided, however, that this indemnity shall not hold good in the event that said parties of the first part shall not notify said party of the second part in sufficient time to give him an opprtunity to defend in said parties of the first part's name any action which said Farrell may bring against said parties of the first part.

"It is further agreed that a draft heretofore made payable to T. J. Ellis & Company, signed by A. Borden, in the sum of $4,450, drawn on Meyer Katz, shall be surrendered simultaneously with the execution of this agreement to said party of the second first. T. J. Ellis, S. C. Ellis, parties of the first part, Meyer Katz, per Louis Mayer, attorney, party of the second part."

Other facts will be stated or referred to in the opinion.

The jury returned a verdict for the plaintiff in the sum of $1,500, and from the judgment rendered Ellis & Company have duly prosecuted this appeal.

*C. L. Poole, Thos. T. Dickinson* and *Powell & Smead,* for appellants.

1. The court erred in dismissing the set-off or counterclaim of the defendants. 134 Ark. 313; 135 *Id.* 534; 134 *Id.* 311. See, for construction of our new statute, 138 Ark. 38, 84; 217 S. W. 774; 16 Mo. 656. See, also, Kirby's Digest, § 509; 86 Mo. 613; 131 *Id.* 668; 69 Ark. 62.

2. Appellants are not liable to appellee at all, as there was no breach of the contract by them and the court erred in its instructions.

*T. D. Wynne* and *C. F. Greenlee,* for appellee.

Counsel for appellant *assume* that there was a written contract between appellee Farrell, and Katz, whereby Farrell sold to Katz steel at Arkansas City and Ellisville, and that Farrell failed to comply with his part of the contract, to the damage of Katz in the sum of $5,000, and that this contract and claim for damages were duly

assigned to appellants. But there was no such contract, and no ground for their contention or argument. 70 Ark. 364. No such contract is found in the bill of exceptions, and the law cited by appellants do not apply. If Farrell did agree to sell steel to Katz at Arkansas City and failed to carry out the contract, appellants could not procure an assignment thereof for the purposes of abrogation in this action. 34 Ark. 144. Since there was no contract and no assignment thereof, it is not necessary to discuss the question whether the assumed assignment was valid or not. The right to recover is clear, and there is no error in the instructions; the verdict is too small by $694.

HART, J. (after stating the facts). It is first insisted by counsel for the defendants that the court erred in dismissing their set-off or counterclaim against Farrell. It will be remembered that the defendants alleged in their answer that Farrell had sold to Katz about five miles of steel rails at Arkansas City, and had failed to deliver them to Katz, to his damage in the sum of $5,000, and that Katz had assigned his claim against Farrell to them.

The court dismissed this part of the answer of the defendants, and it is insisted that this constituted error calling for a reversal of the judgment.

Counsel for the defendants contend that Katz had a right to assign his claim for damages to the defendants, and that they could use it as a set-off in the action against the claim of the plaintiff. Conceding this to be true, the action of the court in dismissing the answer in this respect was not prejudicial error.

Counsel for the defendants were allowed to introduce in evidence the contract they made with Katz. The contract is set out in our agreed statement of facts and need not be repeated here. It bears date of the 6th day of September, 1917. In it Ellis & Company, for the consideration of $2,194.74 sold and transferred to Katz six cars of steel rails, being the steel rails which are the subject-matter of this lawsuit. In the contract it was agreed that if the plaintiff, Farrell, should in the future assert

and maintain any claim against T. J. Ellis and S. C. Ellis for said cars of steel rails, Katz would indemnify them for any money that they might have to pay Farrell. There is nothing whatever in the contract assigning to Ellis & Company the rights of Katz under an alleged contract between him and Farrell for the sale of certain steel rails at Arkansas City. Hence the action of the court in dismissing the part of the defendants' answer referred to did not constitute prejudicial error.

Again, it is insisted that the court erred in not permitting a witness to testify about a contract between Farrell and Katz whereby Farrell sold to Katz the steel rails, which are the subject-matter of this lawsuit, for $38 per ton. Farrell denied that any such contract had been made and objected to parol evidence concerning the same on the ground that the contract itself was the best evidence. The plaintiff was correct. Such contract was not a collateral issue in the case. It was not claimed that it had been lost and it could not be proved by parol testimony without laying the proper foundation therefor. *Lee Line Steamers* v. *Craig,* 111 Ark. 550, and cases cited, and *Home Ins. Co.* v. *North Little Rock Ice & Electric Co.,* 66 Ark. 538. If Ellis & Company wished to interpose as a defense to the action of Farrell against them that Farrell had sold the rails in question to Katz and that they had merely shipped the rails to Katz in accordance with the terms of this contract and the instructions of Farrell, they should have introduced the contract itself in evidence instead of trying to establish its contents by parol evidence. It will be noted that counsel for the defendants purported to read from the contract and was asking the witness if such contract had not been signed by Farrell and by Katz. The court properly held that the contract itself was the best evidence of its contents. Even if they had offered the contract itself in evidence, we could not review the ruling of the circuit court because of the failure of the defendants to set out the re-

jected instrument in the bill of exceptions. *Supreme Lodge Knights of Pythias* v. *Robbins,* 70 Ark. 364.

It is also insisted that the court erred in not admitting in evidence two letters written by the attorney of Katz to Ellis & Company relative to the contention ot Katz with regard to the contract between himself and Farrell. There was no error in the court's ruling in this respect. These letters were not directed to Farrell and were not received or read by him. Therefore he could not in anywise be bound by their contents. The matters contained in them were hearsay, so far as regards the controversy between Farrell and Ellis & Company.

According to the testimony of the plaintiff, he bought from the defendants the steel rails in question, and the defendants subsequently sold and delivered them to Katz and collected the money therefor whereby the plaintiff suffered a loss of profits because he had contracted to sell the rails to another party at an advanced price.

On the other hand, it was the contention of the defendants that they had entered into a written contract with Farrell for the sale of certain steel rails to him at a stipulated price. A part of the rails was delivered to McIntire and to Katz by Ellis & Company under instructions from Farrell. The defendants retained the proportionate part of the purchase price due them for these rails and also the sum of $654, which was due Farrell as his profits in the transaction. Thus far the facts are undisputed. The defendants claim, however, that Farrell sold the remainder of the steel rails which they had sold him to Katz of St. Louis, and they had shipped these rails to Katz and accepted a draft for the purchase money from the agent and attorney of Katz, as they were directed to do by Farrell, and that payment on this draft was refused by Katz without any fault on their part.

The respective theories of the parties to this lawsuit were submitted to the jury under proper instructions which we have considered and find to be correct. There-

fore, we do not deem it necessary to set them out and discuss them in detail.

Counsel for the defendants also complain that the court refused to give an instruction asked by them. We do not deem it necessary to set out this instruction. It was completely covered by the instructions given by the court.

Therefore the judgment will be affirmed.